FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Dec 28, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMBER R.,[1] | No. 1:20-cv-03115-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | ECF Nos. 18, 19 |
| Defendant. | |

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 18, 19.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 18, and denies Defendant's motion, ECF No. 19.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§

404.1502(a), 416.920(a).  Further, a district court "may not reverse an ALJ's

decision on account of an error that is harmless."  *Id*.  An error is harmless "where

it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at

1115 (quotation and citation omitted).  The party appealing the ALJ's decision

generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*,

556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

ORDER - 3

1  work[,] but cannot, considering his age, education, and work experience, engage in

2  any other kind of substantial gainful work which exists in the national economy."

3  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

4      The Commissioner has established a five-step sequential analysis to

5  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

6  404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

7  considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

8  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

9  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

10  404.1520(b), 416.920(b).

11      If the claimant is not engaged in substantial gainful activity, the analysis

12  proceeds to step two.  At this step, the Commissioner considers the severity of the

13  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

14  claimant suffers from "any impairment or combination of impairments which

15  significantly limits [his or her] physical or mental ability to do basic work

16  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

17  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

18  however, the Commissioner must find that the claimant is not disabled.  *Id.*

19      At step three, the Commissioner compares the claimant's impairment to

20  severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 4, 2016, Plaintiff applied for Title II disability insurance benefits and on December 19, 2016, she applied for Title XVI supplemental security income benefits, alleging a disability onset date of August 1, 2013 in both applications.  Tr. 15, 103, 208-25.  The applications were denied initially and on reconsideration.  Tr. 128-30, 132-45.  Plaintiff appeared before an administrative

ORDER - 6

1    law judge (ALJ) on May 9, 2019.  Tr. 40-94.  On July 19, 2019, the ALJ denied

2    Plaintiff's claim.  Tr. 12-37.

3        At step one of the sequential evaluation process, the ALJ found Plaintiff,

4    who met the insured status requirements through September 30, 2018, has not

5    engaged in substantial gainful activity since August 1, 2013.  Tr. 18.  At step two,

6    the ALJ found that Plaintiff has the following severe impairments:

7    pelvic/abdominal conditions including endometriosis and status-post multiple

8    surgeries; depressive disorder; anxiety disorder; substance use disorder; and a

9    bladder condition (characterized as interstitial cystitis).  *Id.*

10       At step three, the ALJ found Plaintiff does not have an impairment or

11   combination of impairments that meets or medically equals the severity of a listed

12   impairment.  Tr. 19.  The ALJ then concluded that Plaintiff has the RFC to perform

13   light work with the following limitations:

14       [Plaintiff] is limited to frequent climbing of ramps and stairs; no
         climbing ladders, ropes, or scaffolds; occasional stooping; frequent
15       kneeling, crouching and crawling; simple, routine tasks; in a routine
         work environment with simple work related decisions; and only
16       superficial interaction with co-workers and public.

17   Tr. 21.

18       At step four, the ALJ found Plaintiff is unable to perform any of her past

19   relevant work.  Tr. 28.  At step five, the ALJ found that, considering Plaintiff's

20   age, education, work experience, RFC, and testimony from the vocational expert,

1  there were jobs that existed in significant numbers in the national economy that

2  Plaintiff could perform, such as labeler, merchandise marker, and

3  housekeeper/maid.  Tr. 29.  The ALJ further found that if the RFC were reduced to

4  sedentary work with the same non-exertional limitations, there were jobs that

5  existed in significant number in the national economy that Plaintiff could perform,

6  such as table worker, toy stuffer, and rubber roller grinder.  Tr. 29.  Therefore, the

7  ALJ concluded Plaintiff was not under a disability, as defined in the Social

8  Security Act, from the alleged onset date of August 1, 2013, through the date of the

9  decision.  Tr. 30.

10      On June 10, 2020, the Appeals Council denied review of the ALJ's decision,

11  Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

12  of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

13                                    **ISSUES**

14      Plaintiff seeks judicial review of the Commissioner's final decision denying

15  her disability insurance benefits under Title II and supplemental security income

16  benefits under Title XVI of the Social Security Act.  Plaintiff raises the following

17  issues for review:

18          1.  Whether the ALJ conducted a proper step-three analysis;

19          2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

20          3.  Whether the ALJ properly evaluated the medical opinion evidence.

ORDER - 8

ECF No. 18 at 2.

## DISCUSSION

### A. Step Three

Plaintiff contends the ALJ erred in failing to find Plaintiff's impairments meet or equal Listing 5.08.  ECF No. 18 at 3-5.  At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. §§ 404.1525, 416.925.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

ORDER - 9

1    "To *meet* a listed impairment, a claimant must establish that he or she meets

2    each characteristic of a listed impairment relevant to his or her claim." *Tackett*,

3    180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d).

4    "To *equal* a listed impairment, a claimant must establish symptoms, signs and

5    laboratory findings 'at least equal in severity and duration' to the characteristics of

6    a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original)

7    (quoting 20 C.F.R. § 404.1526(a)). "If a claimant suffers from multiple

8    impairments and none of them individually meets or equals a listed impairment,

9    the collective symptoms, signs and laboratory findings of all of the claimant's

10    impairments will be evaluated to determine whether they meet or equal the

11    characteristics of any relevant listed impairment." *Id*. However, "'[m]edical

12    equivalence must be based on medical findings," and "[a] generalized assertion of

13    functional problems is not enough to establish disability at step three.'" *Id*. at 1100

14    (quoting 20 C.F.R. § 404.1526(a)).

15    The claimant bears the burden of establishing her impairment (or

16    combination of impairments) meets or equals the criteria of a listed impairment.

17    *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's

18    articulation of the reason(s) why the individual is or is not disabled at a later step in

19    the sequential evaluation process will provide rationale that is sufficient for a

20    subsequent reviewer or court to determine the basis for the finding about medical

ORDER - 10

equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings. Tr. 19-20. The ALJ did not specifically address Listing 5.08. Listing 5.08 is met when a Plaintiff demonstrates "weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 C.F.R. § 404, Subpt. P, App. 1, § 5.08. Plaintiff contends she meets or equals Listing 5.08 because she had a BMI of 17.5 or lower at multiple visits during the relevant adjudicative period. ECF No. 18 at 4. Plaintiff had a BMI of 17.5 when she weighed 112 pounds. Tr. 454. Plaintiff cites to medical visits when Plaintiff weighed 112 pounds or less, and therefore had a BMI of 17.5 or lower, between January 24, 2014 through April 26, 2016. ECF No. 18 at 4. The November 14, 2014 and January 20, 2015 visits satisfy the requirement that the evaluations be at least 60 days apart within a consecutive 60-month period. Tr. 348, 482.

However, Plaintiff does not cite to any evidence that demonstrates that she had weight loss due to a digestive disorder, despite prescribed treatment. At the visits where Plaintiff had a BMI of 17.5 or lower, she was seen for depression, endometriosis, hypothyroidism, dyspareunia, migraines, back pain, and infertility.

ORDER - 11

Tr. 329, 348, 359, 397, 419, 451, 454, 482, 484, 1291, 1672, 1684, 1697.  Some of the visits note Plaintiff had "no significant weight loss."  Tr. 451, 454.  Plaintiff argues that the evidence in May of 2016 onward demonstrates Plaintiff had a kink in the sigmoid colon, and she had symptoms including constipation, nausea, and other symptoms, and thus Plaintiff had a "manner of digestive disorder."  ECF No. 18 at 3-4 (citing Tr. 416, 508, 848).  There are no opinions in the record that link any digestive disorder symptoms to her weight loss, and the evidence cited to in 2016 through 2018 that shows improvement in Plaintiff's symptoms and BMI does not provide a causal explanation for her low BMI in 2014 through April 2016.  Further, the evidence Plaintiff relies on that documents Plaintiff treatment in April 2016 onward demonstrates that with treatment Plaintiff consistently had a BMI above 17.5, which indicates that Plaintiff would not meet the listing.  Tr. 441, 448, 451, 552, 555, 585, 659, 779, 861.  Plaintiff has not met her burden in demonstrating she meets Listing 5.08.

Plaintiff argues she equals the listing, because she had a low BMI and she later had nausea, vomiting, and a sigmoid kink.  ECF No. 20 at 2-3.  Again, Plaintiff does not demonstrate that she had weight loss due to any of these symptoms.  Plaintiff also does not demonstrate that she had weight loss despite prescribed treatment.  Plaintiff argues she was seen for pain medication and underwent surgeries for her abdominal pain.  *Id.* (citing Tr. 325, 341, 391, 427,

ORDER - 12

471, 473).  While Plaintiff took pain medication, there is no evidence the pain medication nor surgery was treating any condition that caused her to lose weight. Tr. 325, 342, 391, 427, 471, 473.  Plaintiff has not met her burden in demonstrating her impairments equaled Listing 5.08.  Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 18 at 5-16.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

1  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

2  omitted).  General findings are insufficient; rather, the ALJ must identify what

3  symptom claims are being discounted and what evidence undermines these claims.

4  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

5  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

6  explain why it discounted claimant's symptom claims)).  "The clear and

7  convincing [evidence] standard is the most demanding required in Social Security

8  cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

9  *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

10            Factors to be considered in evaluating the intensity, persistence, and limiting

11  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

12  duration, frequency, and intensity of pain or other symptoms; 3) factors that

13  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

14  side effects of any medication an individual takes or has taken to alleviate pain or

15  other symptoms; 5) treatment, other than medication, an individual receives or has

16  received for relief of pain or other symptoms; 6) any measures other than treatment

17  an individual uses or has used to relieve pain or other symptoms; and 7) any other

18  factors concerning an individual's functional limitations and restrictions due to

19  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

20  404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

ORDER - 14

an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 22.

### 1. Improvement with Treatment

The ALJ found Plaintiff's symptom claims were inconsistent with her improvement with treatment.  Tr. 22-26.  The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ found Plaintiff had improvement in her symptoms with surgery and medication.  Tr. 22.  Plaintiff reported improvement in her pain with gabapentin in 2015, though the improvement reportedly ended.  *Id.* (citing Tr. 402-03).  Plaintiff had a good result from a surgery for her endometriosis in 2014, and she reported in

ORDER - 15

2015 that her endometriosis was no longer causing pain.  Tr. 22 (citing Tr. 348,

473-74).  Plaintiff had no complications following surgery to remove her left ovary

in 2016, and around the same time, Plaintiff reported her pain and urinary

urgency/frequency had significantly improved with changes to her diet.  Tr. 22

(citing Tr. 431).  Plaintiff underwent another endometriosis excision and an

appendectomy in 2017.  Tr. 23 (citing Tr. 508).  Despite ongoing complaints of

pain, Plaintiff's provider noted her endometriosis was essentially gone and the

cystoscopy and urodynamics procedures were normal.  Tr. 23 (citing 562-63,

1041).  Plaintiff described her pain as well-controlled in November 2017, with 70

percent pain relief with medication, and she reported good response to hydro-

distention in 2018.  Tr. 23 (citing Tr. 574, 593, 846-47, 1059).  In 2018, Plaintiff

reported improvement with treatment but stated the symptoms return before her

next appointment.  Tr. 611.  Regarding her mental health symptoms, Plaintiff's

mood was noted as managed on medication, Plaintiff reported tolerating

Clonazepam, and she generally had normal mental status examinations.  Tr. 26,

808, 811, 826, 1492.

   Plaintiff contends the ALJ erred because although she had some

improvement in individual impairments with treatment, she had multiple

impairments that caused ongoing limitations despite treatment.  ECF No. 18 at 5-6.

However, the ALJ reasonably found Plaintiff's complaints are inconsistent with

ORDER - 16

her improvement with treatment.  Medical providers noted that the diagnostic

findings do not support Plaintiff's reported level of pain and distress, Tr. 323, and

her endometriosis was found to be "essentially gone" after her surgery in 2017, Tr.

1035.  Although Plaintiff continued to report pain symptoms, her provider noted in

2018 that there are likely underlying psychological factors that need to be treated.

Tr. 1791.  Despite her complaints of ongoing abdominal pain, no distinct cause

was found in October 2018.  Tr. 647.  The reports of ongoing pain were often

associated with requests for pain medication, as discussed *infra*.

On this record, the ALJ reasonably concluded that Plaintiff's impairments

when treated were not as limiting as Plaintiff claimed. This finding is supported by

substantial evidence and was a clear and convincing reason to discount Plaintiff's

symptoms complaints.

*2. Drug-Seeking Behavior*

The ALJ found Plaintiff engaged in drug-seeking behavior.  Tr. 24.  Drug

seeking behavior can be a clear and convincing reason to discount a claimant's

credibility.  *See Edlund*, 253 F.3d at 1157 (holding that evidence of drug seeking

behavior undermines a claimant's credibility); *Gray v. Comm'r, of Soc. Sec.*, 365

F. App'x 60, 63 (9th Cir. 2010) (evidence of drug-seeking behavior is a valid

reason for finding a claimant not credible); *Lewis v. Astrue*, 238 F. App'x 300, 302

(9th Cir. 2007) (inconsistency with the medical evidence and drug-seeking

ORDER - 17

behavior sufficient to discount credibility); *Morton v. Astrue*, 232 F. App'x 718, 719 (9th Cir. 2007) (drug-seeking behavior is a valid reason for questioning a claimant's credibility).

The ALJ found Plaintiff's complaints of chronic pain were overshadowed by the drug seeking behavior demonstrated in the record. Tr. 24. A medical provider in 2011 noted they were concerned about Plaintiff's narcotic use. *Id.* (citing Tr. 1052). Plaintiff was cautioned in October 2013 to use her pain medications judiciously. Tr. 24 (citing Tr. 384). In March 2014, Plaintiff was diagnosed with physiologic dependence on pain medication, and she was repeatedly advised in 2014 and 2015 that trying to conceive while using Oxycodone could put a fetus at risk. Tr. 34 (citing Tr. 348, 366, 370). Plaintiff reported withdrawal symptoms in July 2014 when she reported losing most of her medication in a toilet. Tr. 24 (citing Tr. 358). In October 2015, a provider stated Plaintiff's pain may be an addiction issue and tapering off opioids was discussed. Tr. 24 (citing Tr. 388). Plaintiff's requests for extra medication were denied on multiple occasions, and she could not get her Oxycodone refilled in August 2018 due to her ongoing marijuana use. Tr. 24-25 (citing Tr. 330, 76, 879). The ALJ also noted Plaintiff was untruthful with providers or failed to follow medication instructions, including failing to bring in a pill bottle for a pill count. Tr. 24-25 (citing Tr. 443-46). Plaintiff reported she may need to seek help for her pain pill dependence but did

not seek treatment.  Tr. 25 (citing Tr. 1493).  In June and July 2017, Plaintiff

sought emergency care and left when she could not get narcotics.  Tr. 25 (citing Tr.

1592, 1604).  Plaintiff was argumentative with staff when denied opiates.  Tr. 25

(citing Tr. 647-49, 1790-95).  Plaintiff also declined other forms of treatment for

her pain, and instead repeatedly requested opiate medication.  Tr. 25 (citing Tr.

1399).  Medical providers have documented their concern regarding Plaintiff's

behaviors.  *See* Tr. 1399.

Plaintiff argues the ALJ erred because there is not sufficient evidence of

drug seeking to completely discount Plaintiff's allegations and contends some of

the records cited to by the ALJ do not demonstrate drug seeking.  ECF No. 18 at

10-13.  Plaintiff also argues her husband has never been documented as drug-

seeking, and her husband repeatedly requested pain medication for her and stated

she may commit suicide without the medication, which supports Plaintiff's

argument the medication was necessary.  ECF No. 18 at 13 (citing Tr. 1603-04,

1794).  However, the ALJ cited to multiple incidences where providers believed

Plaintiff was drug-seeking.  There is also evidence of Plaintiff's husband's

inappropriate behavior related to his requests for medication for Plaintiff.  Tr. 1523

(husband was belligerent on the phone and hung up on staff); Tr. 1636-37

(husband demanded medication and yelled at staff); Tr. 1603, 1792 (husband

cursed at staff and upset at denial of medication); Tr. 1581 (husband yelled at staff

ORDER - 19

regarding pain medication).  Providers have documented Plaintiff giving evasive,

inconsistent answers, becoming tearful, disrespectful, and angry when she is not

given pain medication, refusing non-opiate medication, leaving against medical

advice when she was denied pain medication, and having tachycardia and

tongue/jaw tremors that were concerning indications of opiate dependence.  Tr.

649-51, 1591, 1792.

On this record, the ALJ reasonably found there is evidence of Plaintiff drug-

seeking.  This was a clear and convincing reason, supported by substantial

evidence, to reject Plaintiff's symptom claims.

### 3.  Lack of Treatment

The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's

lack of treatment.  Tr. 25-26.  An unexplained, or inadequately explained, failure to

seek treatment or follow a prescribed course of treatment may be considered when

evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638

(9th Cir. 2007).  And evidence of a claimant's self-limitation and lack of

motivation to seek treatment are appropriate considerations in determining the

credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240

F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th

Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking

treatment).  When there is no evidence suggesting that the failure to seek or

ORDER - 20

participate in treatment is attributable to a mental impairment rather than a

personal preference, it is reasonable for the ALJ to conclude that the level or

frequency of treatment is inconsistent with the alleged severity of complaints.

*Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental

health treatment is partly due to a claimant's mental health condition, it may be

inappropriate to consider a claimant's lack of mental health treatment when

evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100

F.3d 1462, 1465 (9th Cir. 1996).

   While Plaintiff alleges disability in part due to her mental health conditions,

the ALJ found Plaintiff's allegations were inconsistent with Plaintiff's lack of

ongoing mental health treatment.  Tr. 25-26.  Plaintiff participated in mental health

services prior to her alleged onset date, but the services ended prior to the relevant

time period; she was repeatedly encouraged to seek mental health treatment in

2015, but Plaintiff did not re-establish mental health care until May 2017.  *Id.,* Tr.

1469.  Plaintiff was seen from May through July 2017, when she was told her case

was going to be closed due to her lack of contact.  Tr. 26 (citing Tr. 1544).

Plaintiff again saw a mental health provider in 2018, but Plaintiff terminated

services after five months of counseling at the clinic, when the clinic would not

prescribe more pain medication.  Tr. 885.  Plaintiff argues she sought treatment

because her mental health conditions were managed through her primary care

ORDER - 21

providers, and her mental health was primarily impacted by her chronic pain, thus

pain treatment was her focus.  ECF No. 18 at 9.  Plaintiff does not offer any

explanations for why she did not seek mental health treatment for several years

despite recommendations to do so, and why she terminated services in 2017.

Plaintiff does not contend her mental health symptoms interfered with her ability to

seek services.  The ALJ's finding that Plaintiff's allegations were inconsistent with

her lack of treatment is a clear and convincing reason, supported by substantial

evidence, to reject Plaintiff's claims.

### 4. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the

objective medical evidence.  Tr. 22-26.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

However, the objective medical evidence is a relevant factor, along with the

medical source's information about the claimant's pain or other symptoms, in

determining the severity of a claimant's symptoms and their disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

ORDER - 22

1    First, the ALJ found Plaintiff's pain allegations were inconsistent with the

2    objective medical evidence. Tr. 22-26.  The records demonstrate some

3    improvement with treatment, as discussed *supra.* Tr. 22-23.  A 2016 cystoscopy

4    was normal.  Tr. 23 (citing Tr. 419).  In August 2017, Plaintiff reported ongoing

5    pain, but the medical records note Plaintiff's endometriosis was essentially gone.

6    Tr. 23 (citing Tr. 1035).  Plaintiff's cystoscopy and urodynamics procedures were

7    also normal.  Tr. 23 (citing Tr. 14F, 1041).  Despite her complaints of disabling

8    pain, Plaintiff generally had normal strength, range of motion, and gait, although

9    she reported tenderness.  Tr. 24, 448, 1409, 1141, 1597, 448, 599, 605, 1062.  At

10   multiple visits where Plaintiff reported high levels of pain, there were few

11   abnormal findings on examination.  Tr. 24 (citing Tr. 800-6).  While Plaintiff

12   offers an alternative interpretation of the evidence, the Court may not reverse the

13   ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of

14   the record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible

15   to more than one rational interpretation" the court will not reverse the ALJ's

16   decision).

17       Second, the ALJ found Plaintiff's allegation that she has flare-ups that

18   would cause absenteeism due to a need to lie down was inconsistent with the

19   evidence.  Tr. 26.  The ALJ noted Plaintiff did not frequently miss, cancel, or

20   reschedule appointments.  *Id.*  Plaintiff argues her ability to attend an appointment

ORDER - 23

for one to two hours every month is not inconsistent with an inability to maintain

full-time attendance at work, ECF No. 18 at 9, however Plaintiff does not point to

any evidence of her need to lie down.

Third, the ALJ found Plaintiff's claims of disabling limitations were

inconsistent with her efforts to have a baby during the relevant period. Tr. 26. The

ALJ does not set forth an analysis as to how Plaintiff's desire to have a baby is

inconsistent with her allegations. Any err in finding Plaintiff's claims were

inconsistent with her efforts to get pregnant is harmless as the ALJ gave other

supported reasons to reject Plaintiff's allegations. *See Molina,* 674 F.3d at 1115.

On this record, the ALJ reasonably concluded that Plaintiff's symptom

claims were inconsistent with the objective medical evidence. This finding is

supported by substantial evidence and was a clear and convincing reason, along

with the other reasons offered, to discount Plaintiff's symptom complaints.

**C. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in rejecting the opinions of Derek

Leinenbach, M.D.; Joan Harding, M.D.; Myrna Palasi, M.D.; and Jenny Rainey-

Gibson, LMFT. ECF No. 18 at 16-21.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

ORDER - 24

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."
*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).
Generally, a treating physician's opinion carries more weight than an examining
physician's, and an examining physician's opinion carries more weight than a
reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight
to opinions that are explained than to those that are not, and to the opinions of
specialists concerning matters relating to their specialty over that of
nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ
may reject it only by offering "clear and convincing reasons that are supported by
substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).
"However, the ALJ need not accept the opinion of any physician, including a
treating physician, if that opinion is brief, conclusory and inadequately supported
by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228
(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or
examining doctor's opinion is contradicted by another doctor's opinion, an ALJ
may only reject it by providing specific and legitimate reasons that are supported
by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-
31). The opinion of a nonexamining physician may serve as substantial evidence if

ORDER - 25

it is supported by other independent evidence in the record.  *Andrews v. Shalala*,

53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered

'[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original);

*see* 20 C.F.R. § 416.902 (2011)[3] (citing to 20 C.F.R. § 416.913(a)) (acceptable

medical sources are licensed physicians, licensed or certified psychologists,

licensed optometrists, licensed podiatrists, and qualified speech-language

pathologists)).  However, an ALJ is required to consider evidence from non-

acceptable medical sources, such as therapists.  20 C.F.R. § 416.927(f).  An ALJ

may reject the opinion of a non-acceptable medical source by giving reasons

germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

　　*1.  Dr. Leinenbach*

　　On January 24, 2019, Dr. Leinenbach, a reviewing source, reviewed some of

Plaintiff's medical records and rendered an opinion on Plaintiff's functioning.  Tr.

---

[3] This section was amended in 2017, effective March 27, 2017, and in 2018,

effective October 15, 2018.  *See* 20 C.F.R. § 416.902.  Plaintiff filed his/her claim

before March 27, 2017, and the Court applies the regulation in effect at the time

Plaintiff's claim was filed.  *See* 20 C.F.R. § 416.902 (noting changes apply only for

claims filed on or after March 27, 2017).

ORDER - 26

796-97.  Dr. Leinenbach opined Plaintiff is limited to a light RFC, but she has

marked attendance limitations, and moderate postural limitations.  Tr. 796.  The

ALJ did not address Dr. Leinenbach's opinion.  As Dr. Leinenbach is a non-

examining source, the ALJ must consider the opinion and whether it is consistent

with other independent evidence in the record.  *See* 20 C.F.R. §§

404.1527(b),(c)(1), 416.927(b),(c)(1); *Tonapetyan v. Halter,* 242 F.3d 1144, 1149

(9th Cir. 2001); *Lester*, 81 F.3d at 830-31.

Defendant argues the ALJ did not error by failing to address Dr.

Leinenbach's opinion because the opinion did not contain any probative evidence,

and further any error in the rejection of Dr. Leinenbach's opinion was harmless,

because the ALJ gave supported reasons to reject Dr. Palasi and Dr. Harding's

opinions, and the same reasoning applies to Dr. Leinenbach's opinion.  ECF No.

19 at 15-17.  However, the ALJ did not offer any analysis of Dr. Leinenbach's

opinion, and the ALJ did not consider the consistency of Dr. Leinenbach's opinion

with the other opinions, and thus the Court cannot conclude the ALJ would have

rejected Dr. Leinenbach's opinion for the same reasons she rejected the other

opinions.  *See Orn*, 495 F.3d at 630 (The Court will "review only the reasons

provided by the ALJ in the disability determination and may not affirm the ALJ on

a ground upon which he did not rely.").  Further, Dr. Leinenbach's opinion

includes a marked limitation, and thus cannot be found harmless.

ORDER - 27

On remand, the ALJ is instructed to consider Dr. Leinenbach's opinion and incorporate the limitation into the RFC or set forth an analysis of the consistency of the opinion with the other evidence.

### 2. Dr. Harding

On June 5, 2018, Dr. Harding, a treating provider, opined Plaintiff was limited to sedentary work. Tr. 567. The ALJ gave Dr. Harding's opinion little weight. Tr. 27. As Dr. Harding's opinion is contradicted by the opinion of Dr. Koukol, Tr. 109-11, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject Dr. Harding's opinion. *See Bayliss*, 427 F.3d at 1216. As the case is being remanded for the ALJ to consider Dr. Leinenbach's opinion, the ALJ is also instructed to reconsider Dr. Harding's opinion.

### 3. Dr. Palasi

On October 30, 2016, Dr. Palasi reviewed a medical report and rendered an opinion on Plaintiff's functioning. Tr. 784. Dr. Palasi opined Plaintiff is not capable of even sedentary work due to her endometriosis. *Id.* The ALJ gave Dr. Palasi's opinion little weight. Tr. 27. As Dr. Palasi is a non-examining source, the ALJ must consider the opinion and whether it is consistent with other independent evidence in the record. *See* 20 C.F.R. §§ 404.1527(b),(c)(1), 416.927(b),(c)(1); *Tonapetyan,* 242 F.3d at 1149; *Lester*, 81 F.3d at 830-31. As the case is being

remanded for the ALJ to reconsider Dr. Leinenbach's opinion, the ALJ is also

instructed to reconsider Dr. Palasi's opinion.

### 4. Ms. Rainey-Gibson

On May 17, 2018, Ms. Rainey-Gibson, a treating therapist, opined Plaintiff

has mild limitations in her ability to carry out very short and simple instructions;

moderate limitations in her ability to remember instructions and work-like

procedures, sustain ordinary routines, and maintain socially appropriate behavior

and adhere to basic standards of neatness; marked limitations in her ability to

understand/remember very short and simple instructions, understand/remember

detailed instructions, carry out detailed instructions, maintain

attention/concentration for extended periods, perform activities within a schedule

and maintain attendance, work in coordination or in close proximity to others

without being distracted by them, make simple work-related decisions, interact

appropriately with the general public, ask simple questions or request assistance,

accept instructions and respond appropriately to criticism from supervisors, get

along with coworkers or peers without distracting them, respond appropriately to

changes in the work setting, be aware of normal hazards and take appropriate

precautions, travel to unfamiliar places or take public transportation, and set

realistic goals or make plans independently of others; and an extreme limitation in

her ability to complete a normal workday/workweek.  Tr. 564-66.  The ALJ found

ORDER - 29

Ms. Rainey-Gibson's opinion was not supported. Tr. 27. As Ms. Rainey-Gibson

is not an acceptable medical source, the ALJ was required to give germane reasons

to reject the opinion. *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Ms. Rainey-Gibson provided no explanations for the

marked and extreme ratings. *Id.* The Social Security regulations "give more

weight to opinions that are explained than to those that are not." *Holohan*, 246

F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including

a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray*, 554 at 1228. Ms. Rainey-Gibson's opinion is a

checkbox form and does not contain any explanation nor citation to records to

support her opinion. Tr. 564-66. "Although the treating physician's opinions were

in the form of check-box questionnaires, that is not a proper basis for rejecting an

opinion supported by treatment notes." *See Garrison*, 759 F.3d at 1014 n. 17.

Plaintiff does not present any argument that Ms. Rainey-Gibson's opinion is

supported by her treatment notes. ECF No. 18 at 19-21. As discussed *infra,* Ms.

Rainey-Gibson's opinion is inconsistent with the treatment records. This was a

germane to reject Ms. Rainey-Gibson's opinion.

Second, the ALJ found Ms. Rainey-Gibson's opinion was inconsistent with

the objective evidence. Tr. 27. A medical opinion may be rejected if it is

unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at

ORDER - 30

1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d

at 1019.  Moreover, an ALJ is not obliged to credit medical opinions that are

unsupported by the medical source's own data and/or contradicted by the opinions

of other examining medical sources.  *Tommasetti*, 533 F.3d at 1041.  While Ms.

Rainey-Gibson opined Plaintiff had multiple marked limitations, such as a marked

limitation in understanding/remembering very short and simple instructions, the

ALJ found the opinion was inconsistent with the medical records that demonstrate

Plaintiff repeatedly had a normal memory.  Tr. 27.  Ms. Rainey-Gibson's records

contain generally normal mental status examinations, including normal, memory,

thoughts, intelligence, and concentration, with occasional abnormalities such as an

anxious or depressed mood.  Tr. 27, 880, 888, 897, 971, 980, 1002, 1007.  This

was a germane reason to reject Ms. Rainey-Gibson's opinion.

Third, the ALJ found Ms. Rainey-Gibson's opinion was inconsistent with

Plaintiff's activities of daily living.  Tr. 27.  An ALJ may discount a medical

source opinion to the extent it conflicts with the claimant's daily activities.

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Additionally, the ability to care for young children without help has been

considered an activity that may undermine claims of totally disabling pain.

*Rollins,* 261 F.3d at 857.  However, an ALJ must make specific findings before

relying on childcare as an activity inconsistent with disabling limitations.  *Trevizo*

ORDER - 31

1  *v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).  The ALJ found Ms. Rainey-

2  Gibson's opinion that Plaintiff had marked limitations in several areas of

3  functioning, including concentration and social interaction, was inconsistent with

4  Plaintiff's ability to provide childcare for a friend's infant, and help care for her

5  father after he had a stroke.  Tr. 27.  However, the ALJ did not make any findings

6  regarding the extent of care provided.  While the ALJ erred in rejecting the opinion

7  as inconsistent with Plaintiff's activities, the error is harmless as the ALJ gave

8  other supported reasons to reject the opinion.  *See Molina,* 674 F.3d at 1115.  The

9  ALJ did not error in rejecting Ms. Rainey-Gibson's opinion.

10    **D. Remedy**

11        Plaintiff urges this Court to remand for an immediate award of benefits.

12  ECF No. 18 at 21.

13        "The decision whether to remand a case for additional evidence, or simply to

14  award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d

15  1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

16  When the Court reverses an ALJ's decision for error, the Court "ordinarily must

17  remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041,

18  1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

19  proper course, except in rare circumstances, is to remand to the agency for

20  additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

ORDER - 32

775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Plaintiff urges remand for immediate benefits based on the arguments that Plaintiff's impairments meet a listing, and the ALJ erred in rejecting the medical opinions and Plaintiff's symptom claims.  ECF No. 18 at 21.  However, the Court finds Plaintiff did not meet her burden in demonstrating her impairments meet or equal a listing, and the ALJ gave clear and convincing reasons to reject Plaintiff's symptom claims, as discussed *supra*.  While the ALJ erred in rejecting Dr.

Harding's opinion, remand for further proceedings is necessary to resolve conflicts in the record, including conflicts between the medical opinions.  As such, the case is remanded for further proceedings consistent with this Order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED December 28, 2021.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 34